# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 31, 2013

No. 12-31182
Summary Calendar

Lyle W. Cayce
Clerk

In Re: In the Matter of: Marquette Transportation Company, L.L.C., as Owner and Operator of the Towing Vessel Miss Katie, petitioning for Exoneration from and/or Limitation of Liability

MARQUETTE TRANSPORTATION COMPANY, L.L.C., as Owner and Operator of the Towing Vessel Miss Katie, petitioning for Exoneration from and/or Limitation of Liability,

Petitioner - Appellant

v.

GREAT LAKES DREDGE & DOCK COMPANY, L.L.C.,

Claimant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-1448

Before REAVLEY, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:[*]

Petitioner-appellant Marquette Transportation Company, L.L.C. (Marquette) appeals the district court's dismissal of its limitation action as untimely. Finding no error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31182

I.

On January 20, 2011, claimant-appellee Great Lakes Dredge & Dock Company L.L.C.'s (GLDD) dredge TEXAS ran aground in the Brownsville Ship Channel while under the tow of Marquette's tug MISS KATIE. For 17 days, from January 31 to February 16, the TEXAS was out of commission while it was being repaired. On February 18, 2011, Marquette's claims manager emailed GLDD's claims manager requesting the invoice from the repair facility or estimated repair costs and an estimate of costs unrelated to repairs. In a letter dated February 24, 2011, GLDD summarized the facts of the accident and stated its position that the "grounding and resulting damages to the TEXAS were caused by the negligence of the crew of the MISS KATIE." GLDD confirmed its intention to hold Marquette responsible "for not only the physical damages sustained by the TEXAS, but also the consequential damages sustained by [GLDD] as a result of the accident." The letter stated the cost of the repairs related to the casualty as $636,970.06 and attached an invoice and also stated that the casualty had placed "an enormous financial burden on GLDD, and one that Marquette Transportation would eventually have to compensate GLDD for." The letter requested immediate payment for the repair costs, without prejudice, "to mitigate GLDD's damages, eliminate any future claim for interest, and hopefully enable the parties to eventually resolve the remainder of the claim without the need for costly and time consuming litigation." Over the next several months, the parties exchanged invoices for additional costs associated with the repairs totaling $155,083, which Marquette paid.

Throughout this process Marquette requested that GLDD submit a final claim so the parties could settle the entire issue. The parties met on August 25,

No. 12-31182

2011 in Chicago, at which time GLDD discussed its losses arising from the grounding, including the impact the grounding had on its dredging operations. GLDD advised Marquette that its anticipated losses, excluding costs Marquette had already paid, were at least $2.3 million. GLDD did not submit a written claim for economic losses until December 7, 2011, when it sent a letter stating losses totaling $4,725,080.

Six months later, on June 6, 2012, Marquette filed its claim for limitation of liability and posted bond for the limitation fund in the amount of $2.1 million (the alleged value of the MISS KATIE). On GLDD's motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the district court dismissed the action for lack of jurisdiction, ruling that Marquette's limitation action was untimely. Marquette appeals.

## II.

We review de novo the district courts ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), including the determination as to whether the limitation action was timely filed. *In re Eckstein Marine Service, LLC*, 672 F.3d 310, 314 (5th Cir. 2012). However, fact findings underlying the timeliness ruling are reviewed for clear error. *Id.* The party asserting jurisdiction has the burden of proof on the question. *Id.*

## III.

GLDD's motion to dismiss asserted that Marquette's limitation of liability action was not timely filed and challenged the district court's jurisdiction to hear Marquette's petition. The Limitation of Shipowner's Liability Act allows a vessel owner to limit its liability in certain actions for damages to the value of its vessel (and pending freight). 46 U.S.C. § 30505. To secure this statutory

benefit, the Act requires that vessel owners file their petition to limit liability "within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a).  An action not filed within the six-month period should be dismissed as untimely.  *In re Eckstein Marine Service, LLC*, 672 F.3d at 314-15.

The purpose of the statute is to require a shipowner to act promptly to gain the benefit of the statutory right to limit his liability.  *In re Morania Barge No. 190, Inc.*, 690 F.2d 32 (2d Cir. 1982).  The timeline is triggered when written notice received from the claimant reveals a "reasonable probability" that the claim will exceed the value of the vessel indicating that the vessel owner might benefit from the protections of the Act. *In re Eckstein Marine Service, LLC*, 672 F.3d at 317.  Under Fifth Circuit law, the reasonable probability standard

> is not toothless, [but] it is also not particularly stringent. Once a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action. The Limitation Act provides generous statutory protection to the vessel owners who reap all of its benefits. When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner. In other words, if "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."

*Id*. at 317-318 (citations omitted).

The district court carefully engaged in a fact-intensive inquiry into the circumstances of this case and properly concluded that GLDD's written notice in the letter dated February 2011 gave Marquette notice that there was a reasonable probability of a claim exceeding the value of the MISS KATIE.  We

No. 12-31182

agree based on the following statements in the letter and facts discovered during

Marquette's investigatory period.

*        After the collision, the TEXAS was out of commission for 17 days.
*        GLDD requested reimbursement for repairs of $636,970.
*        The letter stated that it intended to hold Marquette responsible for consequential damages arising from the accident, which GLDD characterized as creating "an enormous financial burden."
*        The partial release submitted with the letter stated that payment of repair costs would not release GLDD's other claims including "loss of use of the vessel and/or any other items of damage that may be recoverable, including but not limited to damages that might be related to salvage or pollution prevention or abatement, business interruption, or other consequential/ incidental damages."

Marquette argues that the limitations period did not run from the February letter because despite its repeated requests to GLDD to finalize and quantify its claim, GLDD did not quantify its claim for economic losses until December 7, 2011. We agree with the district court that the February 2011 letter, although it only quantified an amount for physical damages, clearly stated GLDD's intent to claim full consequential damages arising from the accident involving Marquette's vessel. The clear implication of our case law is that "a claimant need not prove or even specifically allege that his damages will exceed the value of the vessel in order to trigger the six-month deadline. So long as the reasonable possibility standard has been met by the claimant's allegations, the vessel owner bears the risk even if the total value of the claim is uncertain." *Id.* at 319. (Finding reasonable probability that claim for personal injury without specifying a sum would exceed the value of the vessel. Claimant claimed that injuries permanently and substantially impaired him and requested damages including post and future loss of earnings, medical expenses,

No. 12-31182

mental anguish and maintenance and care.) See also *In re TOM-MAC, Inc.*, 76 F.3d 678 (5th Cir. 1996)( Holding the six-month deadline was triggered as to a tug and a barge by a claim that TOM-MAC was the owner and operator of a fleet of vessels, among which was the allegedly unseaworthy barge where the accident occurred, where question remained whether the barge was a vessel implicated by the Act.)

## IV.

The district court did not err in concluding that the six-month deadline was triggered by the February 2011 letter and that Marquette's June 2012 petition is therefore untimely filed. For the foregoing reasons, the judgment of dismissal is AFFIRMED.